In the United States District Court
for the Western District of Pennsylvania

Rhonshawn Jackson,
    Plaintiff

: Civil Case No. 1:16-cv-133

: Judge: Kim R. Gibson

    V.

: Magistrate Judge: Susan P. Baxter

Captain Carter, et al;
    Defendants

: Jury Trial Demand Request

## Plaintiff's Second Amended Complaint

### Complaint For Damages:

Plaintiff, Rhonshawn Jackson, pro se, hereby complains against the following defendants in the caption to this complaint and in support thereof avers the following:

### I. Jurisdiction And Venue:

1.) This is a civil rights action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. This action arises out of violations of Title 42 U.S.C. Sections 1983, 1985, And 1986, as well as Title 18 241 And 242. This court has the jurisdiction under 28 U.S.C. Sections 2201 And 2202, And 1331 And § 1343.

### Plaintiff:

2.) Plaintiff, Rhonshawn Jackson, is and was at all times mentioned herein a prisoner of the State Correctional Institution of Forest (SCI-Forest) at P.O. Box 945, Marienville, PA 16239, but is now a prisoner at the State Correctional Institution at Albion (SCI-Albion) at 10745, Route 18, Albion, PA 16475-0002.

<u>DEFENDANTS:</u>

3.) Defendant Carter is and at all times relevant as the Captain of the Security Office at the State Correctional Institution at Forest (SCI-Forest) at P.O. Box 945, Marienville, Pa 16239.

4.) Defendant Hacherl is and was at all times relevant as the Captain of Security at SCI-Forest.

5.) Defendant Haggerty is and was at all times relevant as the Lieutenant of Security at SCI-Forest.

6.) Defendant Dickey is and was at all times relevant as Lieutenant of Security at Forest.

7.) Defendant McNaughton is and was at all times relevant as officer of Security at SCI-Forest.

8.) Defendant Constanzo is and was at all times relevant as officer of Security at SCI-Forest.

9.) Defender Gilara is and at all times relevant as Sargeant on K-Block Restricted Housing Unit at SCI-Forest.

10.) Defendant Oberlander is and at all times relevant as Deputy Facility Manager at SCI-Forest.

11.) Defendant O'Brien is and at all times relevant as Sargeant of the H-Block Restricted Housing Unit at SCI-Albion, 10745, Route 18, Albion, Pa 16475-0002.

12.) Defendant Martucci is and was at all times relevant as Grievance Coordinator at SCI-Albion.

13.) Defendant Hicks is and at all times relevant as Lieutenant at SCI-Albion.

14.) Defendant Robinson is and at all times relevant as Lieutenant at SCI-Albion.

15.) Defendant Clark is and at all times relevant as Superintendant at SCI-Albion.

16.) Each defendant is sued in his/her individual and official capacity. At all times mentioned in this complaint each defendant acted under color of state law.

## II. BACKGROUND

17.) Plaintiff has been in custody and the control of the Commonwealth and the DOC since at least 2000. He remains in the custody and control of the Commonwealth and the DOC today.

18.) Plaintiff was incarcerated at SCI-forest from April of 2014 until December 3, 2015.

19.) While incarcerated at SCI-forest, Plaintiff was housed on A-Block for a night and then locked up and placed in Administrative Custody the next morning due to two co-defendants involved in a riot with plaintiff, being housed at SCI-forest also.

19.) Plaintiff saw the Program Review Committee (P.R.C.) the next week and was told by Deputy Oberlander that he didn't want to let plaintiff out in his population, but due to plaintiff being transfered from SCI-Albion's population to Forest, he would let me out but would be keeping a close eye on plaintiff.

20.) Plaintiff was released to population and placed on C-Block.

21.) Plaintiff was transfered from SCI-Albion's population in April of 2014 to SCI-Forest due to SCI-Albion becoming a "D" stability code jail.

## III. Amended Complaint - SCI-Forest Defendants:

22.) Between the months of April, 2014 to November, 2015, plaintiff was constantly harassed and retaliated against by SCI-forest employees due to filing grievances and everytime plaintiff reported these retaliations and filed grievances it only got worst.

23.) In appx. June/July of 2014, plaintiff was set up and sent to the Restricted Housing Unit (RHU) at SCI-Forest. Plaintiff is a 2-code with no celly and only SCI-Forest guards can pack up plaintiff's property. SCI-Forest employees packed up plaintiff's property and once his property got taken off of C-Block, his personal effects and all of his commissary was stolen by guards. Plaintiff filed a grievance about the theft of his property and was forced to settle for less than what his property was worth or recieve no reimbursement at all. Plaintiff appealed this ultimatum and recieved no response at all.

24.) In appx. September, 2014, C/O McNaughton and another security officer came and did a cell search of plaintiff's cell for all of his D.O.C. policies. C/O McNaughton took a box of plaintiff's policies to security and then came back later on that night and gave plaintiff his box of policies back and plaintiff noticed that some policies were missing. Plaintiff filed a grievance about his policies and Defendant Haggerty denied plaintiff's grievance. Plaintiff appealed to Supt. Overmyer and recieved his policy manuals back that plaintiff had. Plaintiff discovered that Defendant Haggerty had his policies and also authorized and ordered defendant McNaughton to confiscate all of plaintiff's policies. Plaintiff recieved his policies back personally from defendant Haggerty.

25.) On appx. October, 2014, plaintiff was sent to the RHU and this time all of plaintiff's personal books, commissary, legal books, and cosmetics were stolen out of his property by SCI-Forest employees in retaliation for plaintiff filing grievances. Plaintiff filed a grievance and it was ruled in plaintiff's favor, yet plaintiff was only given a new Quran and no reimbursement for all of his other legal property and personal effects even though the grievance officer said plaintiff should be reimbursed for all of his stolen property.

26.) Plaintiff continuously filed grievances about the theft of his property and appeals, only to be retaliated against for filing those grievances by being set up and put in the RHU so that plaintiff's property can be stolen again. This violation of the Pa. Code of Ethics and policy was open and blatant.

27.) On 6/16/15, Plaintiff was locked up for investigation and taken to the RHU, per defendant Flacherl's orders.

28.) Once plaintiff was in the RHU under investigation, on 6/16/15, defendant Flacherl waited until the next shift to send defendants Constanzo and McNaughton to plaintiff's cell to plant a piece of sharp plastic in between plaintiff's locker so plaintiff could get disciplinary time in the RHU, which naturally happened and plaintiff got (45) days in the RHU; for this unlawful cell search was not in accordance with policy. This unlawful search was done in retaliation for the grievances plaintiff filed against defendant Flacherl's underlings and peers, Defendants Haggerty and McNaughton, and contraband was planted to get plaintiff RHU time.

29.) On 6/16/15, at appx. 2:40-3 pm., inmate Talley, who was in cell CB-2042, witnessed defendant McNaughton pull a sharp piece of plastic out of his pocket and pass it to defendant Constanzo before entering plaintiff's cell, and minutes later, both officers came out of plaintiff's cell with the sharp piece of plastic that was in defendant McNaughton's pocket. Inmate Talley told a sergeant and since then has been threatened to be placed in the RHU and set up for lying on staff if he didn't keep his mouth shut.

30.) On 6/16/15, at appx. 2:40 p.m-3p.m, Inmate Webb, who was in CB-2041 cell,

also witnessed defendant McNaughton pull a sharp piece of plastic out of his left pants pocket and pass it to defendant Constanzo before entering plaintiff's cell, and minutes later, both officers came out of plaintiff's cell with the sharp piece of plastic that was in defendant McNaughton's pocket and said they found it in plaintiff's cell.

31.) Between 6/17/15 and 6/20/15, inmate Webb saw defendant McNaughton on the walkway while defendant McNaughton was with another officer, and inmate Webb asked defendant McNaughton what that was about. Defendant McNaughton replied that he didn't know what inmate Webb was talking about, so inmate Webb let defendant McNaughton know that he saw him plant the piece of plastic in plaintiff's cell. Defendant McNaughton then told inmate Webb "to worry about himself" and walked off.

32. A few days after the above incident (paragraph 31), inmate Webb ran into defendant McNaughton in front of the chow hall and was pulled to the side by defendant McNaughton, who told inmate Webb "it would be in his best interest to forget what he saw". Inmate Webb ignored defendant McNaughton's threat and went to go to chow only to have defendant McNaughton order him to go back to his block and deny him his meal.

33.) Plaintiff filed a grievance about the unlawful cell search due to it violating DC-ADM 203 and 6.3.1 policy and plaintiff's 14th amendment.

34.) Defendant Dickey, a security lieutenant, was the grievance officer and denied plaintiff's grievance stating that plaintiff did not get two back to back random searches when the DC-154 8/2/16 states that plaintiff did. Defendant Dickey violated pa. Code of Ethics #B.22 by trying to cover up this

(6)

violation of plaintiff's right and conspiring with his co-workers unethical, retaliatory acts, instead of correcting the error and bringing to the light that "Foul Play" was involved in the searching of plaintiff's cell.

35.) On 7/13/15, due to inmate Webb continuously trying to expose the planting of plastic in plaintiff's cell, inmate Webb was set up and placed in the RHU and given (6) months worth of RHU time for two pieces of sharp plastic allegedly found in his cell while he was in the yard.

36.) Appx. between the middle and end of July, 2015, I was taken to see defendant Haggerty who came to the RHU to interview me about an inmate who had overdosed on the other side of the prison. I told defendant Haggerty that I didn't know anything about that and defendant Haggerty replied that if I didn't want to be involved in it, meaning the investigation of the overdosed prisoner, than I needed to refrain from snitching on the security office in my grievances," I was then escorted back to my cell.

37.) On 7/29/15, a state trooper came to interview me about the same overdosed prisoner that I told defendant Haggerty I knew nothing about. The trooper was accompanied by defendant Carter. At the interview, the trooper produced a typed, altered, copied letter that I allegedly sent to a lady friend. I noticed that it was typed, which meant that my "outgoing" mail was being tampered with in population and I was never given notice that my constitutional rights were being violated. I asked defendant Carter why I was never given notice that my outgoing mail was being tampered with and how they could've gotten permission when there isn't a Regional deputy Secretary. Defendant Carter responded "I know that there

is no Regional Deputy Secretary At this time AND we couldn't have got permission for that, but this is Captain Hacherl's investigation AND he authorized that, I just got handed this investigation."

38.) On 7/30/15, after plaintiff filed grievance #579430 against defendants Carter, Hacherl, Oberlander, and J. Beach, for mail tampering, conspiracy, and violations of his rights, plaintiff was called into A P.R.C. meeting conducted by defendant Oberlander and others. In this meeting, plaintiff asked why he was being put on administrative custody (A.C.) status, and defendant Oberlander replied "Because you're a danger to our institution." I then asked how I was A danger and I don't even have a misconduct for anything? Defendant Oberlander replied "Jackson, we tried to work with you, but you insist on filing these frivolous grievances against me and the security office here and we don't have time for these games." I told defendant Oberlander that my grievances were legit and the investigation will prove it. Defender Oberlander then told me "Jackson, I see you still don't understand how we do things at SCI-Forest so let me give you a sneak preview. If you don't sign off on this grievance you filed against me and the security office, then I'm going to guarantee you that by the time you get out of the RHU, Honey Boo Boo will be the next president! Now go back to your cell and think about what I just told you, and I think you should send Captain Carter an apology letter." Plaintiff was then escorted back to his cell and since he refused to sign off on the grievance as instructed by defendant Oberlander, plaintiff

has been living in fear, paranoia, mental pain and anguish, without any form of relief.

39.) Plaintiff recieved a "new other report" after the above PRC meeting and this new other report stated that I was a danger to others and being put in for a transfer and the Restricted Release List, which was a shock because plaintiff never recieved a misconduct or criminal charges for any wrongdoing.

40.) On appx. the end of August, 2015, inmate Billingsley, a white prisoner, was placed in the RHU on K-block under investigation. Defendant Carter met with him and told him that he was being put in for RRL and if he had any incriminating evidence about plaintiff, that he (Defendant Carter) could make RRL vote sheet go away. When inmate Billingsley said that he didn't have any incriminating information about plaintiff he was taken back to his cell. On appx. September 7, 2015, inmate Billingsley was informed that he was placed on the RRL without ever recieving a misconduct or opportunity to challenge the vote sheet.

41.) On 10/12/15, Plaintiff was moved to K-block's RHU due to helping prisoners with legal cases, filing grievances, and Retaliation. During an inventory of plaintiff's property, defendant Gilara kept referring to him as "Shiz" and when plaintiff respectfully asked defendant Gilara to stop referring to him as "Shiz", defendant Gilara wrote the name "Shiz" on plaintiff's property reciept in bold print. Plaintiff let defendant Gilara know that he would be filing a grievance against his unprofessional conduct after he gets his legal property, and defendant Gilara took it upon himself to retaliate against plaintiff by stating

(9)

that defendant Carter said that plaintiff was not to recieve his legal property until defendant Carter saw them. Plaintiff told defendant Gilara that Superintendant Overmyer approved his legal materials and showed him proof but defendant Gilara still denied plaintiff's approval and continued to search Plaintiff's legal materials until he came across a (28) page lawsuit with (3) prisoner affidavits attached to it against defendants Carter, Flacherl, J. Beach, and oberlander for mail tampering, conspiracy, and retaliation. Defendant Gilara seized plaintiff's lawsuit and threw it in the trash right in front of plaintiff without giving plaintiff a reason why or a confiscation slip as to why he just threw plaintiff's anticipated lawsuit in the trash so I could challenge this act. Due to defendant Gilara's retaliatory acts, plaintiff lost claims against J. Beach, Carter, Flacherl, and oberlander, and his access to the courts.

42.) On the night of 10/12/15, a white prisoner named Chris Balmer, who was on the pod with plaintiff and witnessed plaintiff arguing with defendant Gilara about throwing away his lawsuit and denying Plaintiff his legal materials, asked defendant Gilara why he took plaintiff's legal materials and threw plaintiff's lawsuit in the trash, and defendant Gilara told inmate Balmer that he threw my lawsuit in the trash and denied me my legal materials because plaintiff was "running his mouth" about filing a grievance on him and defendant Carter is a good friend of his.

43.) On 10/18/15, due to the prisoners speaking out against the retaliatory acts of the defendants, plaintiff was moved back to J-Block.

Plaintiff filed a grievance concerning this incident.

44.) On appx. the end of October, Plaintiff was interviewed by the PA. State Police and trooper Kathleen Watters interviewed plaintiff. Plaintiff then told trooper Watters about how he was being retaliated against and that he tried to file criminal charges but nobody got back with him. While plaintiff and Trooper Watters was talking, defendant Haggerty was doing a round and gave plaintiff a menacing stare as he stood outside of the door of the room that plaintiff was being interviewed in. Plaintiff let trooper Watters know what defendant Haggerty was doing and she said that she would leave her card with him and make sure that I got it so that I could contact her if I didn't hear anything about my complaint or I am retaliated against. Trooper Watters then left and gave defendant Haggerty her card to give to me. When Plaintiff was being escorted to his cell, defendant Haggerty approached him and gave him the card and said "If you would've signed off on that grievance like Deputy Oberlander told you to, you wouldn't have to snitch on us to the trooper. By the way, deputy oberlander said to tell you that Captain Carter has a surprise for you." Plaintiff was then taken back to his cell feeling anxiety, fear, paranoia, mental pain and anguish.

45.) On appx. the middle of October, plaintiff was notified that he was on the RRL without ever recieving a misconduct.

46.) On 11/1/15, at 9:45 p.m, plaintiff was given a direct order, per Captain Carters orders, that he needed to pack up all of his property and go back to K-block again.

47.) On 11/4/15, after months of being retaliated against by defendant Carter and his co-horts, plaintiff got upset and sent defendant Carter a serious request slip.

48.) On 11/6/15, plaintiff recieved a response from defendant Carter, and in his response, not once did defendant Carter deny telling defendant Gilara to confiscate my legal property and throw away my lawsuit, or any of the retaliatory acts plaintiff wrote him about, but instead told plaintiff to file a grievance against defendant Gilara.

49.) On 11/6/15, plaintiff recieved his initial grievance response in which grievance officer captain Mongalkizzo stated that I did have a legal exemption from the superintendant, which proved that defendant Gilara had no reason to take my legal property and that he was lying, falsified reports, and had no penological purpose to confiscate all of my legal materials, or throw my lawsuit in the trash. Defendant Gilara even admitted to writing "shiz" on my property reciept. The grievance officer said all of my legal property would be returned to me and that he couldn't determine what happened to my lawsuit so I appealed to the superintendent but got no response.

50.) On 11-7-15, the day after I got my grievance response back in my favor, defendant Gilara came over to J-Block, on plaintiff's pod, and told inmate Bornman, a white prisoner, that plaintiff was a "snitch" and needed to be "shitted down" for ratting on him in a grievance, and for inmate Bornman to spread the word that if he, or someone else, "handled his lightwork", that he (defendant Gilara), would look out for them. So inmate Bornman announced on the block that I was a "snitch" and that if anybody "shitted me down" (assaulted me), that

(12)

defendant Gilara would look out for them.

51.) On 11/12/15, inmate Hillegas, a white prisoner, was called out to see defendant Carter concerning the abuse of another prisoner. Inmate Hillegas came back on the pod after speaking with defendant Carter and began calling plaintiff a "rat" and a "snitch".

52.) From 11/13/15 to 11/16/15, inmates Hillegas and Griffith, two white prisoners, assaulted plaintiff for three days straight by throwing feces and urine on him while he was on his way to the yard, and shooting plaintiff with feces and urine out of toothpaste tubes while through the sides of the doors while calling him a "snitch" and a "rat". When plaintiff requested to be moved where he couldn't be assaulted, he was told that per defendant Carter's orders he wasn't to be moved to any other cell. Plaintiff was assaulted; was assaulted without any chance for relief due to filing grievances on defendants in this action. Plaintiff filed a grievance about these assaults and never recieved a response back.

53.) Prior to the above assaults (Paragraph 52), on appx. 11/5/15, plaintiff was placed in J0-1005 cell beneath a mentally ill prisoner named Bornman, known as "Bang Bang" due to his incessant noise making and banging on toilets, sinks, and doors every single day, all night long, preventing sleep and exacerbating plaintiff's depression, stress disorder, and other mental illnesses. Despite "normal" procedures being to move prisoners to a new cell every (90) days, plaintiff was moved after only four days under the pretext that "too many people knew him", yet such a rule serves no rational, legitimate, penological purpose when plaintiff is locked in a cell (23) hours a day. Plaintiff endured this torture from 11/1/15 to 11/22/15 and plaintiff filed a grievance
(13)

about this incident and asked to be moved to another cell but was denied and re-
cieved no response from the grievance he filed.

54.) On 11/17/15, inmate Hillegas told plaintiff that after his interview
with defendant Carter in his office, defendant Carter asked inmate Hillegas if
he knew plaintiff after he inmate Hillegas asked defendant Carter when he
would be getting out of the RHU. Inmate Hillegas replied that he didn't
know plaintiff and defendant Carter told Hillegas that plaintiff was a
"rat" and that if he "kept plaintiff in line", then he, inmate Hillegas; would
be getting out of the RHU sooner than he thinks.

55.) Defendants were so intent on retaliating against plaintiff that
they refused to give plaintiff any due process, nor an oppurtunity to appeal
and challenge these violations, causing plaintiff to be subjected to atypical
and significant hardship, barbaric housing conditions, and exacerbation of
plaintiff's mental illness and emotional disorders, with deliberate indifference.
Plaintiff went from a Mental Health Stability Code "B" to a stability code
"C" due to the retaliatory actions of the defendants in this action.

56.) On 11/29/15, inmate Bornman let plaintiff know that defendant
Gilara put a "hit" on him and told inmate Bornman that if he took care of
plaintiff for him, that he, defendant Gilara, would look out for him.

57.) Defendants Carter, Hacherl, Haggerty, Dickey, Constadzo, and
McNaughton are all high rank, influential security personell at SCI-Forest
and they entered into a civil conspiracy to racially discriminate against

Plaintiff and other Black prisoners, by allowing "white prisoners" who are caught with large quantities of drugs, destroy SCI-Forest property, and violate D.O.C. policy, to recieve immunity from criminal charges, assessment cost, or RRL placement, as long as they assault "Black prisoners" that file grievances and lawsuits against them, in an attempt to intimidate "Black prisoners into refraining from reporting abuses and violations by security personell at SCI-forest. This illegal tactic and custom that is utilized by the Security personell at SCI-Forest is discriminating against "Black prisoners" such as plaintiff, by allowing "white prisoners" to destroy property, commit crimes, and violate policy without any fear of criminal charges or any extensive disciplinary time like placement on RRL that "Black prisoners" who are in similar situations are subjected to. Plaintiff never got caught with any drugs or got a misconduct or criminal charges for any drugs, yet plaintiff was placed on RRL due to filing grievances and lawsuits, and two white prisoners, Hillegas and Griffith, who got caught with drugs, destroyed D.O.C. property, violated policy, and recieved misconducts for these offenses, got all of there disciplinary time erased, no criminal charges, and released back to population due to them agreeing to assault plaintiff for defendant Carter and security personell at SCI-Forest, to help retaliate against plaintiff for filing grievances and lawsuits.

       58.) Defendant Carter did authorize and release inmate Griffith who got caught in SCI-forests visiting room with a large quantity of drugs and recieved disciplinary time for this, and inmate Hillegas

who was caught drunk with large Amounts of alcohol and destroyed D.O.C. property without ever paying for the property he destroyed, back into general population on the same block with each other, after he erased all of their disciplinary time that they had left in the RHU due to the agreement with defendant Carter they made to assault plaintiff and defame his character By labeling him a "Snitch" and a "rat". Defendant Carter used all "white prisoners" to assault plaintiff and defame plaintiff in an attempt to start a "race war" Between plaintiff and other white prisoners. Defendant Carter put plaintiff's life in danger and was deliberately Indifferent to the safety of plaintiff. Defendant Carter entered into a criminal agreement with inmates Griffith and Hillegas and violated policy, the Pa. Code of Ethics, and the constitutional rights of plaintiff, by erasing there RHU time, giving inmate Griffith immunity on criminal charges for the drugs he got caught with, and giving inmate Hillegas immunity on Assessment charges/cost for all of the D.O.C. property he destroyed at SCI-forest, and releasing two prisoners back in general population and placing them on the same block with each other.

59.) Defendants Hacherl, Dickey, and Haggerty conspired with defendants Constanzo and McNaughton, to plant contraband in plaintiff's cell in retaliation for plaintiff writing grievances against defendant Haggerty and other officers that work in the security office. These officers set plaintiff up to recieve (45) days disciplinary time and then used this tactic of retaliation to illegally confine plaintiff in the RHU while defendant Carter orchestrated his plan to retaliate against plaintiff

(16)

by getting "white prisoners" to assault plaintiff and defame his character, inadequately investigated his grievances, concealed crucial evidence, and de- nied plaintiff relief, while these defendants, all security personell at SCI-Forest, illegally placed plaintiff on the RRL for filing grievances.

60.) On 12/2/15, plaintiff sent a (21) page §1983 complaint with (9) prisoner affidavits attached to it to SCI-Forest's library to be copied. This complaint was against defendants Carter, Macherl, Dickey, Haggerty, Con- Stanzo, McNaughton, Gilara, Oberlander, and Varner for civil conspiracy, retaliation, obstruction to access to courts, failure to protect, defamation of character, coerced assaults, unlawful confinement, falsifying documents, violations of Pa. Code of Ethics #B.22, violations of 1st, 8th, and 14th amend- ments, and deliberate indifference. I also sent a (5) page affidavit from an individual named Keyon Sloane who looked me up on the inter- net and found me, then took it upon himself to contact me and send me a (5) page affidavit that described in detail how he was a eye witness to the murder that I recieved a life sentence for, and how some other man committed the murder and why he committed it. I recieved this "newly discovered evidence" on 12/1/15, and I immediately sent it to the library to be copied so I could get it in court before the (60) days I had to submit it had expired on my time limit with the courts. I also sent the post marked envelope with the date it was sent to me to the library so I could attach it as an exhibit.

61.) On 12/2/15 in the afternoon, after plaintiff sent his copies to the library that morning, plaintiff was told to pack up for transfer.

COUNT ONE:

(Violation of 42 U.S.C. §1983 - Deprivation of Eighth Amendment Right to be free from cruel and unusual punishment).

62.) Paragraphs 22-61 of this complaint are incorporated herein by reference as if set forth in full.

63.) The Eighth Amendment to the U.S. Constitution, applicable by/to the Commonwealth of Pennsylvania through the Fourteenth Amendment to the U.S. Constitution, prohibits "cruel and unusual punishment."

64.) Pursuant to 42 U.S.C. §1983 ("Section 1983"), "every person who, under color... of any state... subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

65.) At all times relevant, all of the Defendants in this action was acting under the color of the laws of the Commonwealth of Pennsylvania and they were all state actors.

66.) Defendants defaming plaintiff's character by labeling him a "snitch" and a "rat", was done sadistically and maliciously for the very purpose of causing plaintiff harm.

67.) Defendants orchestrating and ordering plaintiff to be assaulted by other prisoners, was done maliciously and sadistically to cause plaintiff harm.

(18)

68.) Defendants subjecting plaintiff to constant banging, loud noises, loss of sleep, And exacerbation of his mental illness, was done maliciously and sadistically to cause plaintiff harm.

69.) There was no legitimate law enforcement or penological purpose for the defamation of plaintiff's character, orchestrated assaults on plaintiff, or the exacerbation of plaintiff's mental illness by subjecting him to constant banging, loud noises, loss of sleep, And psychological torture and harm.

70.) By placing plaintiff in JD-1005 cell on appx. 11/5/15, underneath a mentally ill prisoner that bangs on sinks, doors, and toilets all day, defendants deprived plaintiff of his Eighth Amendment right to be free from cruel and unusual punishment in direct violation of Section 1983.

71.) By defendants Haggerty, Carter, and Gilara defaming plaintiff's character by labeling him a "snitch" and a "rat" on appx. the end of October, 11-7-15, And 11-12-15; defendants deprived plaintiff of his Eighth Amendment right to be free from cruel and unusual punishment in direct violation of section 1983.

72.) By defendants Carter and Gilara orchestrating the assaults of plaintiff by other prisoners on 11-7-15 And 11-12-15, which took place from 11-13-15 to 11-16-15, defendants deprived plaintiff of his Eighth Amendment right to be free from cruel and unusual punishment in direct violation of Section 1983.

73.) As a direct and proximate result of the defamation of character, assaults, And exposure to loud banging and loss of sleep, As well as the exacerbation of

Plaintiff's mental illness, plaintiff has suffered, and/or continues to suffer, physical pain, severe mental anguish, psychological pain, humiliation, embarassment, harassment, gruesome nightmares, and other injuries.

Wherefore Plaintiff, Rhonshawn Jackson demands Judgement from defendants Carter, Haggerty, and Gilara on Count One as follows:

(a) Awarding Plaintiff Rhonshawn Jackson compensatory or nominal damages in an amount to be determined at trial;

(b) Awarding Plaintiff Rhonshawn Jackson punitive or consequential damages in an amount to be determined at trial;

(c) Awarding Plaintiff Rhonshawn Jackson interest as appropriate under the law;

(d) Awarding Plaintiff Rhonshawn Jackson reasonable attorneys' fees, costs, and expenses, and;

(e) Granting such other and further relief as the court deems just, proper, and equitable.

## COUNT TWO:

(42 U.S.C. §1983 - Retaliation for Exercising First Amendment Right).

74.) Paragraphs 22—61 of this complaint are incorporated herein by

reference as if set forth in full.

75.) The First Amendment to the U.S. Constitution, applicable to the Commonwealth of Pennsylvania through the Fourteenth Amendment, provides an individual with the right to petition the courts "for a redress of grievances".

76.) At all relevant times, Defendants was acting under the color of the laws of the Commonwealth of Pennsylvania and were all state actors.

77.) The defamation of plaintiff's character, exposure to psychological torture and harm which exacerbated plaintiff's mental illness, and the orchestrated assaults by defendants Carter and Gibra, were all in retaliation for plaintiff availing himself of his first amendment right to file a law-suit and grievances against correctional officers, guards, and officials at SCI-Forest.

78.) Defendant Oberlanders' threat to plaintiff to sign off on grievance #579430 or else risk long term confinement in the RHU on 7/30/15, AND Defendant Oberlander orchestrating the placement on RRL due to plaintiff's refusal to sign off on the grievance was in retaliation for plaintiff availing himself of his first amendment right to take the required steps to petition the courts for relief.

79.) Defendant Gibra's confiscation of plaintiff's legal materials, and the destruction of his lawsuit was in retaliation for plaintiff availing himself of his First Amendment Right to file lawsuits and grievances

against correctional officers at SCI-Forest.

80.) Defendant Haggertys' ordering of defendant McNaughton to come to my cell and confiscate all of my A.D.C. policies and then take some before returning them back to plaintiff in appx. September of 2014, was in retaliation for plaintiff availing himself of his First Amendment Right to take the required steps to petition the courts by filing grievances against guards at SCI Forest.

81.) The Planting of contraband by defendants Constanzo and McNaughton, under the order of Defendant Hacherl, was in retaliation for plaintiff availing himself of his First Amendment right to take the required steps to petition the courts by filing grievances against correctional guards at SCI-Forest.

82.) The falsification of a misconduct for contraband that defendants Constanzo and McNaughton planted in plaintiff's cell, hours after he was in the RHU, by defendant Constanzo, was in retaliation for plaintiff availing himself of his First Amendment Rights to take the required steps to petition the courts by filing grievances against correctional officers at SCI-forest. Defendants Constanzo and McNaughtons retaliatory tactic lead to plaintiff doing (45) days in solitary confinement.

83.) The theft of Plaintiff's legal and personal property everytime his property was left in the care of correctional officers at SCI-Forest, when plaintiff was sent to the RHU in appx. July of 2014 and October, 2014,

(22)

were all in retaliation for plaintiff availing himself of his First Amendment Right to take the required steps to petition the courts by filing grievances against correctional officers at SCI-forest.

84.) Defendants retaliatory actions constituted violations of Section 1983.

85.) As a direct and proximate result of the retaliations by the defendants against plaintiff for exercising his First Amendment Right, Plaintiff has suffered and/or continues to suffer, physical pain, severe mental anguish, humiliation, embarassment, harassment, gruesome nightmares, loss of his lawsuit which lead to loss of legal claims against J. Beach, defendants Carter and Oberlander, placement on the RRL, exacerbation of plaintiff's mental illness, and other injuries.

Wherefore Plaintiff Rhonshawn Jackson demands Judgement from defendants Carter, Gilara, Haggerty, Oberlander, Constanzo, McNaughton, and Hacherl on Count Two as follows:

(a) Awarding Plaintiff Rhonshawn Jackson compensatory or Nominal damages in an amount to be determined at trial;

(b) Awarding Plaintiff Rhonshawn Jackson panitive or consequential damages in an amount to be determined at trial.;

(c) Awarding Plaintiff Rhonshawn Jackson interest as appropiate under the law;

(23)

(d) Awarding Plaintiff Rhanshawn Jackson reasonable attorneys' fees, costs, and expenses; and;

(e) Granting such other and further relief as the Court deems just, proper, and equitable.


COUNT THREE:
(Violations of DC-ADM 804 and the Pa. Code of Ethics #B.6, B.7, B.22, B.30).

86.) Paragraphs 22-61 of this complaint are incorporated herein by reference as if set forth in full.

87.) Defendant Dickey violated the DC-ADM 804 when he purposefully falsified his grievance response of grievance #574517, and stated that plaintiff did not recieve a back to back random cell search when defendant Constanzo specifically stated it was on DC-154 #B.8/21/16. He also violated the Pa. Code of Ethics #B.22 by entering a false, inaccurate, misrepresentation of the facts by conspiring with this violation.

88.) Defendants violated #B.7 of the Pa. Code of Ethics when they stole plaintiff's legal and personal property on appx. July, 2014 and October, 2014.

89.) Defendants Carter and Gilara violated #B.30 of the Pa. Code of Ethics when they authorized the assault of plaintiff by other inmates on 11-7-15 and 11-12-15. These defendants also violated #B.6 of the

(24)

P2. Code of ethics by having a private/personal relationship based on favors and gifts with inmates Hillegas, Griffith, and Bornman.

90.) All of the SCI-Forest defendants violated the DC-ADM 804 policy by retaliating against plaintiff for utilizing the grievance procedure.

91.) The intentional violation of the DC-ADM 804 and the P2. code of ethics served no law enforcement or penological purpose and was outside the scope of the defendant's employment.

92.) As a direct result of these violations, plaintiff has suffered and/or continues to suffer, physical pain, severe mental anguish, humiliation, embarassment, harassment, gruesome nightmares, and other injuries.

Wherefore Plaintiff Rhonshawn Jackson demands Judgement from all of the defendants on Count Three as follows:

(a) Awarding plaintiff Rhonshawn Jackson compensatory or nominal damages in an amount to be determined at trial;

(b) Awarding Plaintiff Rhonshawn Jackson punitive or consequential damages in an amount to be determined at trial;

(c) Awarding Plaintiff Rhonshawn Jackson interest as appropriate under the law; and

(d) Granting such other and further relief as the Court deems just, proper, and equitable.

COUNT FOUR:

(42 U.S.C. §1985 - Civil Conspiracy).

93.) Paragraphs 22-61 of this complaint are incorporated herein by reference as if set forth in full.

94.) The essence of a conspiracy is an agreement or concerted action between individuals. §42 U.S.C.A. §1985 (3).

95.) At all times relevant the defendants at SCI-Forest were acting under the color of the laws of the Commonwealth of Pennsylvania and were all state actors.

96.) All of the defendants mentioned in paragraphs 22-61 of this complaint conspired in concert with each other to deprive plaintiff of his civil rights.

97.) As a direct and proximate result of this civil conspiracy, plaintiff has suffered, and/or continues to suffer, physical pain, severe mental pain and anguish, humiliation, embarrassment, harassment, gruesome nightmares, loss of claims against J. Beach, Carter, and Oberlander, placement on RRL, exacerbation of mental illness, psychological torture/pain, and other injuries.

(26)

Wherefore Plaintiff Rhonshawn Jackson demands Judgement from All of the defendants in this action on Count Four as follows:

(a) Awarding Plaintiff Rhonshawn Jackson compensatory or nominal damages in an amount to be determined at trial;

(b) Awarding Plaintiff Rhonshawn Jackson punitive or consequential damages in an amount to be determined at trial;

(c) Awarding Plaintiff Rhonshawn Jackson interest as appropirate under the Law;

(d) Awarding Plaintiff Rhonshawn Jackson reasonable attorney fees, costs, and expenses; and

(e) Granting such other and further relief as the Court deems, Just, proper, and equitable.

## SCI-ALBion Defendants:

98.) On 12-3-15, plaintiff was transfered to SCI-Albion.

99.) On appx. 12-9-15, plaintiff recieved his copies from SCI-Forests librarian MS. Blake, and signed for them at SCI-ALBion in HC-2010 Cell. Plaintiff then started putting together his petition for "newly discovered evidence"

so that he could submit it to the courts in a timely manner.

100.) On appx. 12-13-15, Plaintiff was told that he would be going to court the next morning and that he needed to pack a overnight bag of shower shoes, soap, washcloth, etc. Since Plaintiff's property he got transfered with was never inventoried, the only property he had in his cell was all of the mail he recieved, thermals, cosmetics, and the copies he had just recieved from Ms. Blake at SCI-Forest. Plaintiff was told to leave all of his property in his cell because he would be back later on that day of 12-14-15.

101.) On 12-14-15, Plaintiff was taken to court and brought back to his cell, HC-2018 cell, later on that day, and discovered that all of his legal and personal property that was left in the cell was gone. Plaintiff asked the guards who were working where his property was at, and was told that the first shift had cleaned his cell out. The second shift searched for my property but couldn't find it.

102.) On 12/15/15, Plaintiff asked defendant O'Brien if he knew where his missing property was at and he told me that he didn't know what happened to it. Plaintiff was told by inmate Robinson that defendant O'Brien had thrown all of Plaintiff's legal/personal property in the trash, and that he, inmate Robinson, had a verbal dispute with defendant O'Brien concerning Plaintiff's manilla envelope that had "LEGAL MAIL" written in bold ink on the front. Inmate Robinson had a verbal dispute with defendant O'Brien because he asked defendant O'Brien why he was

throwing plaintiff's legal mail in the trash and defendant O'Brien told inmate Robinson he was throwing plaintiff's legal mail and personal property away due to plaintiff filing grievances and lawsuits and that SCI-forest had notified him that I was filing grievances and lawsuits there, so he, defendant O'Brien, had to stop plaintiff from continuing to file grievances and lawsuits. As a result to defendant O'Brien's acts, plaintiff was denied relief from the courts on his "newly discovered evidence" and his §1983 action due to blatant obstruction and retaliation from defendant O'Brien.

103.) On 12/16/15, plaintiff filed grievance #602801 concerning the destruction of his legal/personal property, and after the time for a response had expired, plaintiff wrote to grievance coordinator, defendant Martucci, concerning his grievance and got no response.

104.) On 12/23/15, plaintiff wrote to the security department at SCI-Albion and told them that he wanted the video surveillance of 12-14-15 held and that he wanted to file a criminal complaint, but was told that the tape had been taped over.

105.) On 1/11/16, after not hearing anything from defendant Martucci concerning my grievance, I wrote to defendant Martucci again and asked her about my grievance and this time I got a response from her telling me that Lt. Williams, the grievance officer, never did it.

(29)

106.) On 1/15/16, I recieved an extention for grievance # 602801.

107.) On 1/19/16, defendant Hicks conspired with the destruction of my property and denied my grievance without even investigating it. Defendant Hicks never interviewed any of my witnesses or guards that were involved in the illegal destruction of my legal/personal property, yet he lied in his grievance response and said he did. Had defendant Hicks properly investigated plaintiff's grievance, he could've called SCI-Forest and got them to send him a copy of everything plaintiff had so plaintiff could've still submitted his "newly discovered evidence" to the courts and his §1983 action. As a result of defendant Hicks' malicious, retaliatory acts, plaintiff was denied his opportunity to petition the courts for relief on his "newly discovered evidence" and §1983 action due to defendant Hicks conspiring with his cohorts.

108.) Plaintiff grieved these malicious, retaliatory acts employed by defendants Hicks and O'Brien to Superintendent Giroux, and after she properly investigated my grievance claims and learned that defendant Hicks never interviewed my witnesses, she remanded my grievance back down to be properly investigated.

109.) On 3/14/16, after the time for the new grievance officer, defendant Robinson, had expired for him to send me a response, I spoke with defendant Marfucci about my grievance response and she

told me to send her a request slip and she will let me know the disposition.

110.) On 3/15/16, Plaintiff sent defendant Martucci a request slip concerning the disposition of his grievance.

111.) On 3/23/16, after never recieving a response from defendant Martucci, Plaintiff spoke with her again and she told plaintiff that she had a lot of unanswered request slips and would answer his request as soon as she got to it.

112.) On 3/30/16, after never recieving a response from defendant Martucci, or seeing her, plaintiff wrote another request reminding her of his conversation with her about his grievance response.

113). On 4/6/16, after more than a month had passed without a response concerning plaintiff's grievance, Plaintiff wrote defendant Martucci again, but once again plaintiff's request went unanswered.

114.) Per DC-ADM 804 policy, a prisoner cannot appeal to the Superintendent without an initial response from the grievance officer, so on 4/10/16, plaintiff wrote to Superintendent Clark and told him that his grievance concerning his legal materials was being obstructed and asked for defendant Clark to step in on it before plaintiff sought legal $1983 action.

115.) On 4/19/16, after never recieving a response from

defendant Clark, plaintiff wrote to defendant Clark again, letting him know that this is his second request to him about his grievance being obstructed and the destruction of his legal/personal property, and once again plaintiff's grievance went unanswered.

116.) On 5-11-16, after a whole month had passed, plaintiff recieved a response from defendant Clark stating that he would send some-one to speak with him. Plaintiff noticed the superintendant's time stamp on the response stating defendant Clark recieved it on 4/12/16, but had waited, deliberately, a whole month before answering it!

117.) On 5-25-16, an additional (15) days later, plaintiff was interviewed by Captain Campbell who didn't know why defendant Robinson had not given him a copy of his response to my grievance that he said he sent. I told Captain Campbell that the time for me to get my "newly discovered evidence" into the courts had expired and the time for me to get a copy of my legal materials from SCI-Forest has also expired due to the retaliatory tactics of the SCI-Albion defendants.

118.) Defendant Clark conspired with the obstruction of plain-tiff's grievance and did nothing to correct his subordinates, retaliatory, malicious behavior and acts. Defendant Clark entered into an conspiracy with defendants O'Brien, flicker, Robinson, and Martucci to deprive plaintiff of his constitutional and civil rights. Defendant Clark is also

deliberately Indifferent as a Supervisor for tolerating ongoing behavior, and he is deliberately Indifferent to the training of his officers which lead to an atmosphere where his subordinates feel comfortable to deprive Plaintiff of his constitutional rights with impunity. This deficiency in defendant: Clarks training of his officers lead to the injuries complained of in this complaint at SCI-ALBion, by Plaintiff.

COUNT ONE:
( Violation of 42 U.S.C. §1983 - Deprivation of Eighth Amendment Right to be free from cruel And unusual punishment )

119.) Paragraphs 98-118 of this complaint are incorporated herein by reference as if set forth in full.

120.) The Eight Amendment to the U.S. Constitution, applicable to the Commonwealth of Pennsylvania through the Fourteenth Amendment to the U.S. Constitution, prohibits cruel and unusual punishment.

121.) Pursuant to 42 U.S.C. §1983 ("Section 1983), "every person who, under color... of Any state... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured By the Constitution and it's laws, shall be liable to the party injured in an action at law.

(33)

122.) At all times relevant, all of the SCI-Albion defendants were acting under color of the laws of the Commonwealth of Pennsylvania and were all state actors.

123.) Defendant O'Brien's malicious destruction of plaintiff's legal and personal property was done sadistically and maliciously for the very purpose of causing plaintiff harm.

124.) There was no legitimate or penological purpose or legitimate law enforcement for the destruction of Plaintiff's legal/personal property.

125.) By maliciously destroying plaintiff's personal and legal property which contained plaintiff's "newly discovered evidence" to challenge his conviction in which he recieved a life sentence for, defendant O'Brien caused plaintiff, a verified "C" code on the active Mental Health tracking roster, to experience psychological torture and harm, and deprived plaintiff of his Eighth Amendment Right to be free from cruel and unusual punishment in direct violation of Section 1983.

126.) As a direct and proximate result of defendant O'Brien's malicious act, plaintiff suffered and continues to suffer, physical pain, severe mental anguish, loss of claims and relief from the courts for his §1983 action, and loss of his "newly discovered evidence" and relief from the courts for his evidence, and other injuries.

Wherefore Plaintiff Rhonsheen Jackson demands Judgement from defendant O'Brien on Count One as follows:

(a) Awarding Plaintiff compensatory or nominal damages in an amount to be determined at trial;

(b) Awarding Plaintiff punitive or consequential damages in an amount to be determined at trial;

(c) Awarding Plaintiff interest as appropriate under the law;

(d) Awarding Plaintiff Attorney fees, costs, and expenses; and

(e) Granting such other and further relief as the Court deems just, proper, and equitable.

COUNT TWO:
(42 U.S.C. § 1983 - Retaliation for exercising First Amendment Right).

127.) Paragraphs 98-118 of this complaint are incorporated herein by reference as if set forth in full.

128.) The First Amendment to the U.S. Constitution, applicable to the Commonwealth of Pennsylvania through the Fourteenth Amendment, provides an individual with the right to petition the courts "for a redress of grievances."

129.) Defendant O'Brien, at all relevant times, was acting under the color of the laws of the Commonwealth of Pennsylvania and was a state actor.

(35)

130.) the destruction of Plaintiff's legal materials and personal property by defendant O'Brien was in retaliation for Mr. Jackson, Plaintiff, availing himself of his First Amendment Right to file lawsuits and grievances against SCI-Albion correctional officers and lawsuits and grievances against correctional officers, guards, and officials at and/or responsible for another facility.

131.) Defendant O'Brien's retaliatory actions constitute a direct violation of section 1983.

132.) As a direct and proximate result of defendant O'Brien's retaliatory actions, Plaintiff has suffered, and/or continues to suffer, physical pain, severe mental anguish, psychological torture and pain, exacerbation of his mental illness, loss of relief from the courts due to the destruction of Plaintiff's "newly discovered evidence" by defendanT, loss of claims and relief from the courts for his §1983 action thaT was destroyed by defendant O'Brien, and other injuries.

Wherefore Plaintiff Khonshawn Jackson demands Judgement from Defendant O'Brien as follows:

(a) Awarding Plaintiff compensatory and nominal damages in an amount to be determined at trial;

(b) Awarding Plaintiff punitive or consequential damages in an amount to be determined at trial;

(c) Awarding Plaintiff interest as appropriate under the law;

(d) Awarding Plaintiff reasonable attorney fees, costs, and expenses; and

(e) Granting such other and further relief as the Court deems just, proper, and equitable.

## COUNT THREE:
(Violations of the DC-ADM 804 and the Pa. Code of Ethics #B.22).

133.) Paragraphs 98-118 of this complaint are incorporated herein by reference as if set forth in full.

134.) As grievance Coordinator, defendant Martucci had a duty and obligation per DC-ADM 804 policy to ensure that the grievance officers she assigned to plaintiff's grievance, on initial responses as well as remand responses, investigated and responded to plaintiff's grievance in a timely manner and sent her their responses so that she could initial and date them for department records. Defendant Martucci's failure to enforce this policy requirement violated DC-ADM 804 policy and obstructed Plaintiff from getting relief in his administrative remedies.

135.) As grievance officer, defendant Hicks had an duty and obligation to give plaintiff's grievance an proper, adequate investigation instead of blatantly lying in his report/response. Defendant Hicks violation

of the DC-ADM 804 and his violation of the Pa. Code of Ethics #B.22, obstructed plaintiff from exhausting his administrative remedies and/or seeking relief in a timely manner due to defendant Hicks lying in his report.

136.) As grievance officer, defendant Robinson has a duty and obligation to give plaintiff's grievance a proper and adequate investigation in a timely manner. By defendant Robinson failing to respond at all to plaintiff's grievance, he violated the DC-ADM 804 requirements and obligations of grievance officers and obstructed plaintiff from fully exhausting his administrative remedies.

137.) As Superintendent, defendant Clark has a duty and obligation to respond to plaintiff's request slip in a timely manner per DC-ADM 804 policy. Once defendant Clark was put on "notice" of plaintiff's emergency matter and the obstruction of plaintiff's grievance by his subordinates, defendant Clark had a duty per policy and law to uphold the Pa. Code of Ethics #B.14 and Section C once he was made aware of his subordinates unethical, unconstitutional acts, failure to do so lead to plaintiff being denied the right to fully exhaust his administrative remedies due to the deliberate indifference of defendant Clark by waiting a month and a half before addressing plaintiff's request slip to him.

138.) The intentional violations of the DC-ADM 804 and the Pa. Code of Ethics served no legitimate law enforcement or penological purpose

and was outside the scope of these defendants employment.

139.) As a direct and proximate result of these violations, Plaintiff suffered and/or continues to suffer physical pain, severe mental anguish, loss of relief from the courts for his "newly discovered evidence", loss of relief and claims for his §1983 action, and other injuries.

Wherefore Plaintiff Rhonshawn Jackson demands from defendants O'Brien, Martucci, Hicks, Robinson, and Clark, Judgement as follows:

(a) Awarding Plaintiff compensatory or nominal damages in an amount to be determined at trial;

(b) Awarding Plaintiff punitive or consequential damages in an amount to be determined at trial;

(c) Awarding Plaintiff interest as appropriate under the law; and

(d) Granting such other and further relief as the court deems just, proper, and equitable.

COUNT FOUR:
(42 U.S.C. §1985-Civil Conspiracy (3)):

139. Paragraphs 98-118 of this complaint are incorporated herein by reference as if set forth in full.

(39)

140.) The essence of a conspiracy is an agreement or concerted action between individuals. 42 U.S.C. § 1985 (3).

141.) All of the defendants mentioned in paragraphs 98–118 of this complaint conspired with each other, in concert, to deprive plaintiff of his civil and constitutional rights.

142.) As a direct result of this civil conspiracy, Plaintiff has suffered, and/or continues to suffer, physical pain, severe mental anguish, psychological torture and pain, exacerbation of his mental illness, loss of relief from the courts for his "newly discovered evidence", loss of relief and claims in his § 1983 action, and other injuries.

Wherefore plaintiff Rhonshawn Jackson demands judgement from all of the SCI-Albion defendants on Count Four as follows:

(a) Awarding Plaintiff compensatory or nominal damages in an amount to be determined at trial;

(b) Awarding Plaintiff punitive or consequential damages in an amount to be determined at trial;

(c) Awarding Plaintiff interest as appropriate under the law;

(d) Awarding Plaintiff reasonable Attorney fees, costs, expenses;

(e) Awarding Plaintiff a remedy to the destruction of his

"Newly discovered evidence" to the courts for relief; and

(f) Granting such other and further relief as the court deems just, proper, and equitable.

## JURY DEMAND:

Pursuant to Rule 38 of the Fed. R. Civ. P., Plaintiff hereby demands a jury trial for all issues properly triable before a jury.

Respectfully Submitted,

/s/ _____

Rhonshawn Jackson
GW-4530
10745, Route 18
Albion, PA 16475-0002

Dated: November 3, 2016.

(41)

In the United States District Court

for the Western District of Pennsylvania

Rhonshawn Jackson,          : Civil Action No. 1:16-CV-133
      Plaintiff

                            : Judge: Kim R. Gibson

      V.
                            : Magistrate Judge: Susan P. Baxter

Beard, et al;
      Defendants            :
                            :

## VERIFICATION:

I, Rhonshawn Jackson, verify that the statements made in this complaint are true and correct, except those statements alleged upon information and belief, which statements I believe to be true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. 4904, relating to unsworn falsification to authorities.

/S/ _____
Rhonshawn Jackson

(42)

In the United States District Court
For the Western District of Pennsylvania

Rhonshawn Jackson,          : Civil Case No. 1:16-CV-133
            Plaintiff

                            : Judge: Kim R. Gibson

    V.                      : Magistrate Judge: Susan P. Baxter

Carter, et al.,             :
    Defendants              :

CERTIFICATE OF SERVICE

I, Rhonshawn Jackson, hereby certify that I did send a true and
correct copy of the foregoing document titled "Motion for Leave to
file an Amended Complaint" and "Plaintiff's Second Amended Complaint"
by First Class U.S. Mail and postage to the following below on November
, 2016:

                J. Eric Barchiesi
                Office of Attorney General
                6th floor, Manor Complex
                564 Forbes Avenue
                Pittsburgh, Pa 15219


Dated: November 3, 2016.               /s/ [signature]
                                        Rhonshawn Jackson
                                        GW-4530
                                        10745, Rt. 18
                                        Albion, PA 16475-0002

(43)