IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RHONSHAWN JACKSON, )<br>        Plaintiff )<br>    v. )<br>         )<br>CAPTAIN CARTER, et al., )<br>        Defendants. ) | C.A. No. 16-133 Erie<br><br>District Judge Susan Paradise Baxter |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Rhonshawn Jackson, an inmate currently incarcerated at the State Correctional Institution at Frackville, Pennsylvania ("SCI-Frackville")[1], initiated this civil rights action in the United States District Court for the Middle District of Pennsylvania on May 5, 2016, by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983. Plaintiff subsequently filed an amended complaint on May 18, 2016 [ECF No. 6], and this action was then transferred to this Court on June 7, 2016. On August 29, 2016, this case was assigned to District Judge Kim R. Gibson as presiding judge, and to the undersigned, as the referred Magistrate Judge.

On November 26, 2016, Plaintiff filed a second amended complaint [ECF No. 26], which is now the operative pleading in this case. Named as Defendants in the second amended complaint are SCI-Forest corrections officers Carter, Hacherl, Haggerty, Dickey, McNaughton, Constanzo, and Gilara; Mr. Oberlander, Deputy Facility Manager at SCI-Forest; SCI-Albion corrections officers O'Brien, Martucci, Hicks, and Robinson; and SCI-Albion Superintendent Clark.

---

[1] At the time he filed this action, Plaintiff was incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), after having previously been incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest").

On September 26, 2017, District Judge Gibson issued a Memorandum Order [ECF No. 40] adopting this Court's Report and Recommendation [ECF No. 36] and dismissing a number of Plaintiff's claims. In addition, Defendants Martucci, Hicks, Robinson, and Clark were terminated from this case. The only claims left in this case are: (1) conspiracy and First Amendment claims against all remaining Defendants, based upon alleged retaliation against Plaintiff for filing grievances; (2) Eighth Amendment claims against Defendants Haggerty, Gilara, and Carter, alleging that said Defendants failed to protect Plaintiff from violence at the hands of other inmates; and (3) claims of harassment and interference with legal mail against all remaining Defendants.

On September 14, 2018, the undersigned was sworn in as a United States District Judge, and this action was subsequently reassigned to the undersigned, as presiding judge, on September 17, 2018. Now pending before this Court is Defendants' motion for summary judgment [ECF No. 71] asserting, *inter alia*, that Plaintiff failed to exhaust his administrative remedies as to all claims remaining in this case. Plaintiff has since filed a brief in opposition to Defendants' motion [ECF No. 78]. This matter is now ripe for consideration.

## II. DISCUSSION

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA") provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.[2]

---

[2] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 216 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[4]

Indeed, the United States Supreme Court has repeatedly confirmed that "[t]here is no question that exhaustion is mandatory under the PLRA." Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, 1856 (2016), quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006), accord Jones v. Bock, 549 U.S. 199, 211 (2007). "And that mandatory language means a court may not excuse a failure to exhaust, even to take [] [special] circumstances into account." Ross at 1856.

---

exhaustion in their complaints"). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

[3] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[4] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 251 Fed. Appx. 774, 776 (3d Cir. 2007) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

3

Because the PLRA is a statutory exhaustion provision, "Congress sets the rules – and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857. Accordingly, exhaustion is required regardless of the availability of the requested relief, and regardless of the nature of the underlying claim, whether it arises from excessive force, or a violation of the constitution. Id., citing Booth v. Churner, 532 U.S. 731, 741 (2001); Porter, 534 U.S. at 520; Woodford, 548 U.S. at 91. Additionally, exhaustion must be "proper," which "demands compliance with an agency's deadlines and other critical procedural rules." Woodford, at 90. This serves to protect "administrative agency authority" over the matter, giving an agency "an opportunity to correct its own mistakes … before it is haled into federal court," and "discourages 'disregard of [the agency's] procedures." Id. at 89, quoting McCarthy, 503 U.S. at 145.

### 1. The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218.

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a

written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

### 2. Analysis

In support of their argument that Plaintiff failed to exhaust administrative remedies as to all claims against them, Defendants have submitted the Declaration of Michael Bell ("Bell Declaration"), Grievance Officer in the DOC Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), who declares the following, in pertinent part:

> 11. I reviewed the grievance appeal records of inmate Rhonshawn Jackson, Inmate Number GW-4530.
>
> \*          \*          \*
>
> 14. My review of the Grievance History shows that Grievance Number 572199 was the only grievance Inmate Jackson followed to Final Review.
>
> 15. In Grievance Number 572199, Inmate Jackson alleged that his assigned cell was subject to random searches on June 14, 2015 or June 15, 2015. Inmate Jackson alleged this was a violation of 6.3.1 Facility Security Manual and the Department Code of Ethics. He also alleged he was the subject of harassment or evil motive and intent. No particular person is expressly named in this Grievance and the only relief demanded in this Grievance is that a fill investigation be done on what Inmate Jackson labels the "2nd random cell search."
>
> 16. In the Initial Review Response, Lieut. Dickey denied the Grievance noting that Jackson was the subject of a random cell search on June 14, 2015…. The Grievance Officer found no evidence to support any wrongdoing on the part of the staff and, therefore, the Grievance was denied and deemed frivolous.

17. Inmate Jackson appealed the Initial Review in a timely manner, alleging "Officer Dickey's report is inaccurate." Apart from a reference to "Officer Dickey," no other staff member or individual is identified in the appeal....

18. In the Facility Manager's appeal response, Superintendent Overmyer found no violations of DC ADM 804 occurred ….

19. Thereafter, Inmate Jackson filed an Appeal to Final Review, demanding a thorough investigation be done into the cell searches because the decisions of Lt. Dickey and Superintendent Overmyer purportedly were inaccurate and incomplete.

20. In the Final Appeal Decision, Chief Grievance Officer, Dorina Varner, upheld the denial of the grievance and found the searches to which Inmate Jackson was subjected were proper.…

21. Grievance 572199 was the only Grievance [SOIGA] received from Inmate Jackson relative to the pending action.

(ECF No. 75-5, Declaration of Michael Bell, at ¶¶ 11, 14-21).

In his opposition brief, Plaintiff does not deny the accuracy of the grievance record, as summarized in the Bell Declaration, nor does he argue that he did, in fact, exhaust his administrative remedies with regard to any of the grievances underlying the claims in this case. Instead, he argues that "none of the grievance responses … pertaining to the grievances filed by plaintiff concerning the issues in his complaint are in accordance with the defendants own policy due to these responses not having the Grievance Coordinator's initials and date on them … per the defendants own DC-ADM 804 policy." (ECF No. 78, at p. 4). In other words, Plaintiff is essentially arguing that Defendants grievance responses were procedurally defective and, thus, "obstructed" Plaintiff's ability to exhaust his administrative remedies. To illustrate his point, Plaintiff references Defendant Dickey's responses to Grievance Nos. 572199 [ECF No. 80-13], 574517 [ECF No. 80-43], and 576291 [ECF No. 80-50].

The Third Circuit has recognized a "reluctance to invoke equitable reasons to excuse [an

inmate's] failure to exhaust as the [PLRA] requires." Davis v. Warman, 49 Fed. Appx. 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 Fed. Appx. 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis, 49 Fed. Appx. at 368. This he has failed to do. Even assuming that Plaintiff is correct in asserting that Defendant Dickey's initial review responses as to the referenced grievances were not approved in accordance with DOC policy, it is apparent from the record that this alleged procedural defect did not, in any way, hinder or obstruct Plaintiff from filing timely appeals from the first two of these grievances (See ECF No. 75-7 at pp. 3-4 and ECF No. 74-8 at pp. 5-6, respectively), while Plaintiff had no reason to file an appeal from the third, as it was upheld (See ECF No. 80-50). Moreover, the type of procedural defects highlighted by Plaintiff are not of the type that would have misled Plaintiff or prevented him from complying with the exhaustion requirements. Thus, Plaintiff's argument is unavailing.

As to the only grievance that was appealed to final review, Grievance No. 572199, it is apparent that Plaintiff failed to identify any of the Defendants in this case as to the underlying claim of retaliation and conspiracy.[5] The Third Circuit Court has consistently recognized that "a Pennsylvania inmate's failure to properly identify a defendant constitute[s] a failure to properly exhaust his administrative remedies under the PLRA." Williams v. Pennsylvania Dept. of Corrections, 146 Fed. Appx. 554, 557 (3d Cir. 2005), citing Spruill, 372 F.3d 218, 234 (3d Cir. 2004). See also Rosa-Diaz v. Dow, 683 Fed. Appx. 103, 105–06 (3d Cir. 2017) (finding lack of

---

[5] Although Plaintiff did identify Defendant Dickey in his appeals to the Superintendent and to final review, it is apparent that Defendant Dickey was not involved in the underlying claim of retaliation and conspiracy, but was only implicated in the context of his Initial Review Response.

exhaustion and procedural default where inmate failed to name particular defendant in grievance).

Based on the foregoing, the Court finds that Plaintiff failed to exhaust his administrative remedies with regard to any of his remaining claims in this case, and summary judgment will be entered in favor of Defendants, accordingly.

An appropriate Order follows.