IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RHONSHAWN JACKSON                    : C.A. No. 16-133 ERIE
   PLAINTIFF


        V.                           : District Judge Baxter


PA DEPARTMENT OF CORRECTIONS, et al;
   DEFENDANTS                                    :

**FILED**

AUG 21 2020

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

PLAINTIFF'S PRETRIAL NARRATIVE STATEMENT:

Pursuant to this court's order, Plaintiff, Rhonshawn Jackson pro se, submits the following
pretrial narrative statement;

1. Factual and Legal Contentions pursued

The State Correctional Institution at Forest & Albion had a custom of failing to supervise
& discipline its employees. That failure led to a culture of terrorism, cyclical abuse of
prisoners & a disregard for prisoners constitutional rights. Plaintiff is one victim among
thousands.

During his incarceration at SCI-Forest from 2014 - December of 2015, the defendants subjected
plaintiff to a campaign of harassment  & abuse as part of an unwritten policy of establishing
dominance through brutality & retaliating against prisoners who had the courage to file grie-
vances or speak out against it. The defendants violated plaintiff's First, Eighth,& Fourteenth
Amendment rights, among other things,& defamed his character by labeling him a "rat" & a
"snitch" every time plaintiff utilized the defendants grievance policy to report the abuses
& retaliation he endured, as well as planting contraband in plaintiff's cell so that plaintiff
would receive additional time in solitary confinement which is what happened,& the defendants
also wrote fabricated misconduct reports & destroyed plaintiff's legal materials/personal
property in an attempt to deter plaintiff & other inmates from filing any further grievances
& lawsuits,& subjecting him to psychological/mental torture via excessive segregation in
hopes that plaintiff would kill himself.

BACKGROUND:

 Plaintiff was transferred to SCI-Forest in October of 2014. Although plaintiff committed
no disciplinary infraction, he was immediately placed in the Restricted Housing Unit(RHU),
the next morning, where he remained at for three whole weeks until he was seen by the PRC.

Plaintiff suffered atypical & significant hardship. He was placed in isolation for 23 hours each day. He received only one hour of "exercise". He was fed in his cell with his food passed to him on an uncovered tray through a slot in the door. His living quarters were grossly unsanitary & he did not have access to cleaning supplies. He had little to no access to any laundry services,& he had absolutely no access to education, recreational, or vocational activities or other sources of mental stimulation. Moreover, like other prisoners in the RHU, plaintiff had severely limited access to the law library. After being forced to endure this type of cruel & unusual punishment for no penelogical reason at all for (3) weeks, plaintiff was released to general population, only to be further retaliated against because he would not stop filing grievances & reporting abuses.

## THE INCIDENTS:

The first major incident took place in June/July of 2014, when plaintiff was setup & sent to the RHU at SCI-Forest, so that all of his personal property could be stolen by the guards who packed up his cell contents. Due to the fact that plaintiff is a "Z-Code" & is not permitted to have any cellies, only guards can pack up his cell contents & handle his property. After plaintiff filed a grievance about the theft of his property & won, he was forced to settle for less than what his property was worth or receive no reimbursement at all. Plaintiff appealed this ultimatum & received no response.

The June/July incident was only the beginning. Two months later, in September of 2014, defendant McNaughton came & conducted a "harassing cell search" of plaintiff's cell,& confiscated all of plaintiff's DOC policies due to plaintiff referencing certain sections of the policy that the defendants were violating in his grievances. Plaintiff filed a grievance about this incident, only to have defendant Haggerty deny his grievance. Plaintiff appealed to the Facility Manager & won all of his DOC policies back. Plaintiff later discovered that it was defendant Haggerty that ordered defendant McNaughton to confiscate all of his DOC policies.

The next month, October of 2014, plaintiff was once again setup & placed in the RHU,& this time all of his plaintiff's personal books, commissary, legal books,& cosmetics were stolen out of his property by the guards who packed up his cell contents due to plaintiff filing grievances. Plaintiff filed a grievance concerning the theft of his property again,& again won his grievance. Yet, the defendants refused to reimburse plaintiff for his property even after the grievance officer stated in his decision that plaintiff should be reimbursed for all of his stolen property. Plaintiff appealed to the Facility Manager & received no response.

Plaintiff continuously filed grievances about the retaliation & abuses that he endured, only to be repeatedly setup & placed back into the RHU so that his property could be stolen again.

On June 16, 2020, plaintiff was locked up & placed in the RHU for investigation. While plaintiff was locked up in the RHU, defendant Hacherl waited until the next shift to send defedants Constanzo & McNaughton to plaintiff's cell to plant a piece of sharp plastic in between plaintiff's locker so plaintiff could get disciplinary time in the RHU, which naturally happened. Plaintiff received (45) days in the RHU for this unlawful cell search which was not in accordance with policy. This unlawful cell search was done in retaliation for the grievances plaintiff filed against defendant Hacherl's underlings & peers. defendants McNaughton & Constanzo planted contraband in plaintiff's cell in retaliation for plaintiff filing grievances.

On 6/16/15, inmate Talley witnessed defendants Constanzo & McNaughton plant the contraband in plaintiff's cell,& reported what he saw to the Unit Sgt, only to be threatened to be placed in the RHU for lying on staff if he didn't keep his mouth shut.

Also on June 16, 2015, inmate Webb witnessed defendants Constanzo & McNaughton plant contraband & inmate Webb let defendant McNaughton know that he saw him plant the contraband in plaintiff's cell, only to have defendant McNaughton deny inmate Webb his dinner meal & then give him a warning to keep his mouth shut. Then on July 13, 2015, due to inmate Webb continuously exposing the planting of contraband in plaintiff's cell, inmate Webb was setup while he was in the yard by having his cell unlawfully searched by defendant McNaughton & having the same contraband that was planted in plaintiff's cell, now placed in inmate Webb's cell causing inmate Webb to receive (60) days in the RHU.

In July Of 2015, plaintiff was taken to speak to defendant Haggerty for an interview. Defendant Haggerty asked plaintiff if he knew anything about the distribution of drugs into the facility & the death of an prisoner. After plaintiff let defendant Haggerty know that he didn't know anything, defendant Haggerty let plaintiff know that if he didn't want to be involved in the investigation of the dead inmate, then plaintiff needed to stop snitching on the Security Office in his grievances,& was then escorted back to his cell.

A couple days later, a State trooper & Internal Affairs came to speak to plaintiff about the large quantities of illegal drugs that were being distributed in the facility & the death of the inmate that defendant Haggerty asked plaintiff about & plaintiff let the trooper & Internal Affairs know that he didn't know anything. Defendant Carter was also at this meeting & gave the State Trooper a letter that plaintiff was supposed to have allegedly wrote. Upon plaintiff seeing that the letter was altered & plaintiff's signature was forged on it, along with the fact that plaintiff's outgoing mail was being illegally opened, plaintiff asked defendant Carter about the illegal searching of his mail, only to be told by defendant Carter that defendant Hacherl authorized the illegal reading of plaintiff's outgoing mail. After

hearing this, plaintiff asked to be taken back to his cell so that he could write a grievance about what had just occurred.

On July 30, 2015, the day after I filed a grievance against the defendants about the illegal searching of my outgoing mail, defendant Oberlander called a surprise PRC meeting. At this meeting, defendant Oberlander let plaintiff know that if he didn't refrain from filing grievances against the Security Office,& sign off on the grievance about his mail, then plaintiff would be in the RHU for a long time. When plaintiff refused to sign off on the grievance he filed about his mail, defendant Oberlander sent plaintiff back to his cell to think about what he had just been told, leaving plaintiff living in fear, paranoia, mental pain & anguish, without any form of relief.
That night, plaintiff received a "new other report" stating that plaintiff would be placed on the Restricted Release List(RRL), which is indefinite solitary confinement.

At the end of August of 2015, inmate Billingsley was placed in the RHU under investigation. Defendant Carter interviewed inmate Billingsley & told him that he was being placed back on the RRL after just getting off of the RRL after (14) years. When inmate Billingsley asked defendant Carter why this was happening, defendant Carter let inmate Billingsley know that he could stop him from going back on the RRL if he had some incriminating information about plaintiff. When inmate Billingsley told defendant Carter that he didn't have any incriminating information about plaintiff, he was then taken back to his cell. Two weeks later, on September 7, 2015, inmate Billingsley was informed that he was placed back on the RRL without ever receiving a misconduct or an opportunity to challenge the vote sheet.

On October 12, 2015, plaintiff was moved to K-Block's RHU due to helping other inmates with their legal cases, filing grievances,& reporting abuses. During an inventory of plaintiff's property, defendant Gilara kept referring to plaintiff as "Shiz" & when plaintiff respectfully asked defendant Gilara to stop referring to him as "Shiz", defendant Gilara then wrote the name "Shiz" on plaintiff's property receipt in bold print. Plaintiff let defendant Gilara know that he was filing a grievance against him for his unprofessional conduct after he gets his legal property,& defendant Gilara confiscated all of plaintiff's legal property & then told plaintiff that defendant Carter authorized him to do it. Plaintiff let defendant Gilara know that he has a legal exemption from the Superintendent, but defendant Gilara still ignored plaintiff's legal exemption & continued to search plaintiff's legal property until he came across a (28) page anticipated lawsuit that plaintiff was filing, with (3) inmate affidavits attached to it, against defendant Carter & others,& then threw it in the trash right in front of plaintiff without giving plaintiff a confiscation sheet so that plaintiff could challenge the confiscation.

On the night of 10/12/15, inmate Balmer witnessed plaintiff & defendant Gilara arguing

about the illegal disposal of plaintiff's legal materials,& inmate Palmer asked defendant Gilara why he threw plaintiff's lawsuit in the trash & confiscate all of his legal materials,& defendant Gilara said that he did it because plaintiff was running his mouth & defendant Carter is a good friend of his.

On November 1, 2015, plaintiff was moved back to J-Block.

On 11/6/15, plaintiff received his grievance response back from the grievance that he had filed against defendant Gilara,& the grievance was upheld in plaintiff's favor & defendant Gilara was ordered to return all of plaintiff's legal property to him.

The very next day on 11/7/15, after defendant Gilara was ordered to return all of plaintiff's legal property back to him, defendant came on plaintiff's pod & told inmate Bornman that plaintiff was a "rat" & was snitching on him in his grievances & that he need to be "dealt with". Defendant Gilara then let inmate Bornman know that he would "look out" for anybody that would assault plaintiff for him.

On 11/12/15, defendant Carter called inmate Hillegas to an interview,& at this interview, defendant Carter asked inmate Hillegas if he knew plaintiff & inmate Hillegas replied that he didn't know plaintiff. Defendant Carter then told inmate Hillegas that plaintiff has been snitching on the Security Office & that if inmate Hillegas & his cousin "took care of" plaintiff & "kept him in line", then defendant Carter would make sure that inmate Hillegas & his cousin Griffith got released from the RHU.

The whole time that plaintiff was being retaliated against by the defendants in this action, he was losing sleep, not eating, worrying, stressed out, suffering from psychological pain, mental pain & anguish, as well as depression, due to the defendants threatening to pin the death of another inmate on plaintiff if he didn't sign off on the grievance he filed against the defendants in this action and stop reporting abuses. Plaintiff didn't sign off on his grievances against the defendants or stop reporting abuses because if he was killed by the defendants he wanted his family & friends to know who had murdered him & why.

On 12/2/15, plaintiff sent a (21) page lawsuit with (9) inmate affidavits attached to it to the law library at SCI-Forest so that it could be copied,& hours later plaintiff was told to pack up his belongings cause he was being transferred to SCI-Albion.

On 12/9/15, while at SCI-Albion, plaintiff received his copies of his lawsuit from SCI-Forest. Along with his copy of his lawsuit was his copy of his affidavit he had just received from Keyon Sloane, which was "newly discovered evidence" because this affidavit was proof that it was someone else who committed the murder that plaintiff received a Life sentence for.

On 12/13/15, plaintiff was told that he would be going to court & would be coming back the same day so he didn't need to pack up his cell contents because he would be coming back to his same cell.

On 12/14/15, plaintiff was taken to his one day court date & brought back to his same cell. When plaintiff's cell was opened he immediately noticed that his cell was completely empty & all of his cell contents were gone. Plaintiff asked the guards where his cell property was at & he was told that the first shift has his property.

On 12/15/15, plaintiff asked defendant O'Brien where his property was at & defendant O'Brien said that he didn't know. Upon hearing this, inmate Robinson immediately got on the door & let plaintiff know that defendant O'Brien threw away all of plaintiff's legal/personal property due to plaintiff filing grievances & lawsuits. Inmate Robinson even let plaintiff know that other inmates spoke up about defendant o'Brien throwing away all of plaintiff's legal/personal property, only to have defendant O'Brien tell the other inmates that if they didn't want the same thing to happen to them then they shouldn't follow in plaintiff's footsteps by filing grievances & lawsuits. Plaintiff filed a grievance about this incident, only to have defendant Martucci conspire with defendant O'Brien's retaliatory actions by making sure that no grievance officer that she assigned to my grievance answered it.

On 3/8/16, due to plaintiff filing a grievances & lawsuits against defendant O'Brien & other correctional defendants, defendant O'Brien denied plaintiff his law library with inmate Jacobs & any other law libraries that plaintiff signed up for. Plaintiff asked defendant O'Brien why he kept retaliating against him & why he threw plaintiff's legal/personal property away & then defendant O'Brien told plaintiff that its because plaintiff keeps filing grievances & lawsuits & somebody has got to stop plaintiff from filing grievances & lawsuits. Upon saying this to plaintiff, another inmate named Ramirez told defendant O'Brien that he was wrong for retaliating against plaintiff & throwing away plaintiff's legal/personal property,& defendant O'Brien told inmate Ramirez that he needed to mind his business if he ever wanted to get out of the RHU.

Through the deliberate indifference of the supervisory defendants in this case, the State Correctional Institutions at Forest & Albion,& the supervisory defendants are liable for the injuries that plaintiff suffered for its policy, practice or custom of failing to properly investigate grievances & allegations against staff, failing to discipline employees for their violation of policy & Code of Ethics,& their failure to process grievances & other evidence,& not ensuring constitutionally living conditions. Defendants retaliated against plaintiff & obstructed plaintiff's grievances to conceal these violations & to deter plaintiff & other inmates from reporting abuses & violations by correctional officers.

## II. WITNESSES TO BE CALLED:

1. Michael Clark
   SCI–Albion
   10745 Route 18
   Albion, Pa 16475–0001
   Supervisory Liability/Damages

2. Roni Martucci
   SCI–Albion
   10745 Route 18
   Albion, PA 16475–0001
   Supervisory Liability/Damages

3. Captain Campbell
   SCI–Albion
   10745 Route 18
   Albion, PA 16475–0001
   Supervisory Liability/Damages

4. Sarah Siegel
   SCI–Forest
   286 Woodland Drive
   P.O. Box 307
   Marienville, PA 16239–0307
   Supervisory Liability/Damages

5. James Blicha
   SCI–Forest
   286 Woodland Drive
   P.O. Box 307
   Marienville, PA 16239–0307
   Supervisory Liability/Damages

6. Robert Ramirez #EG–5483
   SCI–Albion
   10745 Route 18
   Albion, PA 16475–0001
   Liability/Damages

7. Antonio Ortiz #GN–2351
   SCI–Benner
   301 Institution Drive

Bellefonte, PA 16823
Liability/Damages

8. Chris Balmer #GX-5754
   SCI-Frackville
   1111 Altamont Boulevard
   Frackville, PA 17931-2699
   Liability/Damages

9. Vincent Talley #EE-4642
   SCI-Chester
   600 E. 4th Street
   Chester, PA 19013-4551
   Liability/Damages

10. Kevin Billingsley #CC-0124
    SCI-Benner
    301 Institution Drive
    Bellefonte, PA 16823
    Liability/Damages

11. Johnathan Hillegas #KC-5549
    SCI-Forest
    286 Woodland Drive
    P.O. Box 307
    Marienville, PA 16239-0307
    Liability/Damages

12. Philip E. Bornman #HL-7919
    SCI-Forest
    286 Woodland Drive
    P.O. Box 307
    Marienville, PA 16239-0307
    Liability/Damages

13. Elijah Sewell Griffith #HE-0690
    SCI-Forest
    286 Woodland Drive
    P.O. Box 307
    MArienville, PA 16239-0307
    Liability/Damages

14. Michael Webb #GU-2501

    SCI-Forest

    286 Woodland Drive

    P.O. Box 307

    Marienville, PA 16239-0307

    Liability/Damages

15. Plaintiff may present any necessary rebuttal witnesses.

16. Plaintiff may present any witness listed in Defendants' Pretrial Statement.

17. Plaintiff may amend this witness list at any time, at or before trial.

### III. LEGAL ISSUES:

1. Plaintiff may seek to address a situation where there are no African Americans in the array for the jury selection.

2. Stipulations as to the authenticity or admissibility of any witness or document.

3. Plaintiff cannot wear a electroshock belt because of injuries & because he will be biased & prejudiced against in light of the jury.

### IV. DAMAGES:

Plaintiff values his pain & suffering & permanent psychological injuries at $350,000 minimum

Respectfully Submitted,

/s/

Rhonshawn Jackson #GW-4530

SCI-Rockview

1 Rockview Place

Bellefonte, PA 16823

Dated: August 15, 2020.

CERTIFICATE OF SERVICE:

I, Rhonshawn Jackson, PRO SE, HEREby certify that on August 15, 2020, I caused to be served a TRue and correct copy of the foregoing document TITLED "Plaintiff's "Pretrial Narrative Statement" to the names and address Below via First CLASS postage and U.S. Mail:

OFFice of Attorney General
c/o: Timothy Mazzocca /
   Scott A. Bradley
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222

Date: August 15, 2020,

By: /s/ _____
Rhonshawn Jackson
# GW-4530
PRO SE